## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHAN WARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESSILORLUXOTTICA S.A.; LUXOTTICA OF AMERICA, INC.; and ESSILOR OF AMERICA, INC.<br><br>Defendants. | Case No. 26-cv-1133<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Nathan Ward, individually and on behalf of the Classes defined herein of similarly situated consumers, bring this class action suit for damages and equitable relief against Defendants EssilorLuxottica S.A., Luxottica of America, Inc., and Essilor of America, Inc. (collectively, "Defendants" or "EssilorLuxottica"). Plaintiff alleges the following based upon personal information as to allegations regarding themselves and the investigation of their counsel, and on information and belief as to all other allegations.

## NATURE OF THE ACTION

1.      EssilorLuxottica designs, manufactures, imports, and sells ophthalmic lenses, eyeglass frames, and sunglasses.

2.      Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act ("IEEPA") to impose new and significant tariffs ("subject tariffs") on imports from nearly every foreign country, including those from which EssilorLuxottica sources its products.

1

3.      Following the imposition of the subject tariffs, EssilorLuxottica publicly stated that it would implement price increases across its product lines to manage the financial impact of the subject tariffs. Consistent with these statements, retail prices for EssilorLuxottica products increased in the United States as a result of the tariffs. Plaintiff and the Class purchased EssilorLuxottica products after these price increases took effect and, as a result, paid higher prices reflecting these tariff-related adjustments ("tariff surcharges").

4.      At the same time, EssilorLuxottica challenged the legality of the subject tariffs in the United States Court of International Trade, seeking to halt enforcement of the tariff orders and obtain refunds of the duties it paid because of the subject tariffs.

5.      In demanding a refund for duties paid because of the subject tariffs, EssilorLuxottica did not acknowledge the consumers to whom EssilorLuxottica had passed on the economic burden of those duties through the tariff surcharges. The case before the Court of International Trade was stayed pending the Supreme Court's resolution of *V.O.S. Selections, Inc. v. Trump*, in which businesses challenged the lawfulness of the subject tariffs. On February 20, 2026, the Supreme Court held that the subject tariffs were unlawful. *Learning Res., Inc. v. Trump*, 607 U.S. ___, Nos. 24-1287, 25-250, 2026 WL 477534, at *13–14 (U.S. Feb. 20, 2026).

6.      Despite seeking an order entitling it to a refund of the duties collected as a result of the subject tariffs, EssilorLuxottica continues to collect and has not refunded the tariff surcharges it collected from consumers. Upon the determination that the subject tariffs were unlawful, giving rise to EssilorLuxottica's right to receive the duties it paid under the unlawful tariff scheme, EssilorLuxottica is likewise obligated to return the corresponding tariff surcharge collected from Plaintiff and Class members. EssilorLuxottica's retention of those surcharges unjustly profits EssilorLuxottica at the expense of consumers.

7.      Accordingly, Plaintiff, on behalf of himself and the estimated thousands or millions of similarly situated consumers, seeks to ensure that his and the proposed Classes' contributions to paying the subject tariffs are returned and to demand appropriate monetary, equitable, injunctive, and declaratory relief.

**PARTIES**

## I.      PLAINTIFF

8.      Plaintiff Nathan Ward is a New York resident. On August 18, 2025, Ward purchased Ray-Ban sunglasses from ray-ban.com while residing in New York.

## II.      DEFENDANTS

9.      Defendant EssilorLuxottica S.A. is a joint stock company incorporated under the laws of France, with a registered office in Charenton-Le-Pont, France. EssilorLuxottica S.A. was formed from the 2018 merger of Luxottica Group S.p.A. and Essilor International SAS. Luxottica Group S.p.A. is a corporation organized under the laws of Italy with its principal place of business in Milan, Italy, and an office in the United States in Mason, Ohio. Luxottica Group S.p.A. owns Luxottica U.S. Holdings Corp, online retailer Glasses.com, Oakley, Inc., Alain Mikli, Arnette, Oliver Peoples, Persol, Ray-Ban, Sferoflex, Starck Biotech Paris, and Vogue Eyewear. Essilor International SAS is upon information and belief a French simplified joint-stock company with its principal place of business in Charenton-le-Pont, France. Essilor International SAS owns Essilor of America Holding Company, Inc. and Costa Del Mar, Inc.

10.      Defendant Luxottica of America, Inc. is an Ohio corporation with its principal place of business in Mason, Ohio. Luxottica of America, Inc. is owned by Luxottica U.S. Holdings Corp., a Delaware corporation with its principal place of business in Port Washington, New York. Luxottica of America, Inc. owns eyewear retailers LensCrafters, Pearle Vision, Target Optical,

and Sunglass Hut (together with Oakley retail stores, Ray-Ban retail stores, glasses.com, framesdirect.com, and For Eyes).

11.      Defendant Essilor of America, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. Essilor of America, Inc. is owned by Essilor of America Holding Company, Inc. Upon information and belief, Essilor of America Inc. owns Vision Source and Frames for America, Inc.

## JURISDICTION

12.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 putative members in the proposed class, and at least one Class Member (e.g., Plaintiff) is a citizen of a state different from any Defendant.

13.      The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are part of the same case or controversy.

14.      The Court has personal jurisdiction over Luxottica of America, Inc. because it is owned by Luxottica U.S. Holdings Corp., which is headquartered in this district.

15.      The Court also has personal jurisdiction over the EssilorLuxottica S.A., Luxottica of America, Inc., and Essilor of America, Inc. because each committed the acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum, including by selling and shipping its products to consumers in this District.

16.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

17.     EssilorLuxottica is a global vision care, eyewear, and optical technology company that designs, manufactures, imports, and sells ophthalmic lenses, eyeglass frames, and sunglasses.[1] EssilorLuxottica has a "vertically integrated business model" that covers the "entire value chain" of the eyewear industry.[2] To that end, EssilorLuxottica manufactures lenses and frames and distributes those products through its retail and e-commerce outlets, where it sells them to consumers.

18.     EssilorLuxottica owns some of the most well-known eyewear brands including, *inter alia*, Ray-Ban, Oakley, Sferoflex, Vogue Eyewear, Persol, Arnette, Oliver Peoples, Alain Mikli, Starck Biotech Paris, and Costa Del Mar. EssilorLuxottica owns and controls the direct-to-consumer retail and e-commerce outlets for these brands including, *inter alia* Oakley stores, Ray-Ban stores, Oliver Peoples stores, together with oakley.com, ray-ban.com, oliverpeoples.com, persol.com, costadelmar.com, vogue-eyewear.com, and arnette.com.

19.     EssilorLuxottica also owns the largest eyewear retailers and e-commerce outlets in the United States including, *inter alia*, LensCrafters (lenscrafters.com), Pearle Vision (pearlevision.com), Target Optical (targetoptical.com), Vision Source, and Sunglass Hut (sunglesshut.com).

20.     By their own admission, EssilorLuxottica, Essilor of America, Inc., Luxottica of America, and Oakley, Inc. are importers of merchandise into the United States subject to the challenged subject tariffs described below.[3]

---

[1] EssilorLuxottica, Our Strategy, https://www.essilorluxottica.com/en/group/strategy/ (last visited Feb. 12, 2026).

[2] *Id.*

[3] Complaint, *EssilorLuxottica et al v. United States Customs and Border Prot. et al*, No. 1:25-cv-00310 (Ct. Int'l Trade Nov. 26, 2025), Dkt. No. 2.

I.  **PRESIDENT TRUMP ORDERS A SERIES OF TARIFFS.**

21.    Beginning in February 2025, President Trump issued a series of executive orders imposing new tariffs under the International Emergency Economic Powers Act (IEEPA), each tied to a declared national emergency.

22.    On February 1, 2025, President Trump issued three orders directed at Mexico, Canada, and China, collectively referred to as the "Trafficking Tariff Orders."

23.    The executive order directed at Mexico imposed an additional 25 percent tariff on the import of goods from Mexico.[4]

24.    The executive order directed at Canada imposed a 25 percent tariff on the import of goods from Canada, with certain exceptions.[5]

25.    The executive order directed at China imposed an additional 10 percent *ad valorem* tariff on the import of goods from China on top of existing duties.[6] Through a series of amendments to this executive order, President Trump increased the tariff on the import of goods from China to 20%.[7]

26.    On April 2, 2025, President Trump issued a separate order—the "Reciprocal Tariff Order"—declaring U.S. trade deficits a national emergency.[8] Effective April 9, this order imposed

---

[4] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

[5] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

[6] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[7] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[8] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

a 10% baseline tariff on nearly all imports and added higher, country-specific "reciprocal" tariffs on 57 countries ranging from 11% to 50%.[9]

27.    Within days, China imposed retaliatory tariffs and the President raised the reciprocal tariff on China from 34% to 84%, and the next day increased it again to 125%, while temporarily suspending elevated tariffs for other countries.[10] When combined with the trafficking tariff, most Chinese imports now faced a minimum 145% tariff.

## II.    ESSILORLUXOTTICA CHARGES CONSUMERS MORE BECAUSE OF THESE TARIFFS.

28.    Although they may be nominally directed extraterritorially, the increased costs created by the subject tariffs are borne almost entirely by U.S. importers and consumers.[11] Researchers studying recent tariffs estimate that approximately 96% of the tariff cost burden is passed through to American consumers.[12]

29.    While importers must pay the subject tariffs at the border, wholesalers, manufacturers, and retailers all face a choice: whether to absorb the burden of the subject tariffs or to pass that burden on to their customers.[13] In most cases, including in the case of

---

[9] *Id.*

[10] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025); Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

[11] Julian Hinz, et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. (Jan. 19, 2026), https://www.kielinstitut.de/fileadmin/Dateiverwaltung/IfW-Publications/fis-import/92fb3f30-07b8-4dcf-b2bc-fbefb831f1a1-KPB201_EN.pdf .

[12] *Id.*

[13] *Id.* at 7.

EssilorLuxottica, the burden of tariffs is eventually passed through to U.S. consumers through retail price increases.[14]

30.    In a May 2025 survey of businesses in the New York-New Jersey region conducted by the Federal Reserve Bank of New York, three-quarters of both manufacturing and service businesses facing tariff-induced cost increases reported they passed along at least some of these higher costs to their customers by raising prices.[15] Among those businesses, 40% of manufacturers reported passing along greater than 75% of the tariff-induced cost to their customers.[16] EssilorLuxottica's actions exemplify this process.

31.    EssilorLuxottica asserts in its Court of International Trade complaint that it paid duties imposed by the subject tariffs on a "continuous basis."[17] To offset these IEEPA duties, EssilorLuxottica admits it passes tariff-induced cost increases on to its consumers ("tariff surcharges").

32.    As early as April 23, 2025, EssilorLuxottica stated that it would pass along the cost of the subject tariffs to its customers. On a Q1 earnings call, EssilorLuxottica Chairman and CEO Francesco Milleri stated the company was "moving toward the price adjustment in the single-digit territory in the United States across the different product lines and across our distribution

---

[14] *Id.*

[15] Jaison R. Abel, et al., *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y. (June 4, 2025), https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/.

[16] *Id.*

[17] Complaint at 15, *EssilorLuxottica*, *supra* note 3.

channels."[18] EssilorLuxottica implemented these measures to "manage the impact of U.S. import duties."[19]

33.    By July 2025, EssilorLuxottica confirmed it had already increased prices in the United States by "mid-single digits" but that the "full effect of these adjustments" would be reflected in the second half of 2025.[20] EssilorLuxottica expressed that it was continuing to operate in a "volatile environment," referring to the subject tariffs, and would continue to use pricing actions in response to the tariff.[21]

34.    EssilorLuxottica's tariff surcharges are apparent in retail price increases for its products, which closely follow the imposition of the subject tariffs and EssilorLuxottica's public statements. The following examples are reconstructed price histories of EssilorLuxottica's retail prices at Target Optical, one of its retail outlets:

---

[18] Hugo Lhomedet & Alessandro Parodi, *Ray-Ban Maker EssilorLuxottica Confirms Outlook, to Raise US Prices Due to Tariffs* (Apr. 23, 2025), https://money.usnews.com/investing/news/articles/2025-04-23/essilorluxottica-confirms-outlook-despite-tariff-impact.

[19] *Q1 2025 Revenue*, EssilorLuxottica (Apr. 23, 2025), https://www.essilorluxottica.com/cap/content/254176/.

[20] Vlad Schepkov, *EssilorLuxottica Adjusts Strategy Amid U.S. Tariffs, Boosts Meta Smartglass Outlook*, Investing.com (July 28, 2025), https://www.investing.com/news/stock-market-news/essilorluxottica-adjusts-strategy-amid-us-tariffs-boosts-meta-smartglass-outlook-93CH-4155848.

[21] *Q2/H1 2025 Results*, EssilorLuxottica (July 28, 2025), https://www.essilorluxottica.com/cap/content/259500/ ; https://rss.globenewswire.com/news-release/2025/07/29/3123502/0/en/EssilorLuxottica-Publication-of-the-2025-Interim-Financial-Report.html.

| Oakley OO9208 RADAR® EV PATH®[22] | | | |
|---|---|---|---|
| Oct. 8, 2024 | Jan. 20, 2025 | May 22, 2025 | Feb. 10, 2026 |
| $271 | $271 | $287 | $287 |
| Oakley 0OO9437[23] | | | |
|  | Mar. 20, 2025 | May 16, 2025 | Feb. 10, 2026 |
|  | $266 | $283 | $283 |
| Ray-Ban RB8313 Carbon Fibre[24] | | | |
| Sept. 15, 2024 | Mar. 23, 2025 | May 19, 2025 | Feb. 10, 2026 |
| $287 | $287 | $304 | $304 |
| Ray-Ban 0RB3539[25] | | | |
| July 18, 2024 | Mar. 18, 2025 | May 22, 2025 | Feb. 10, 2026 |
| $186 | $186 | $197 | $197 |

35.    The historical price of each example product increases by the end of May 2025, contemporaneous with the imposition of the subject tariffs and consistent with EssilorLuxottica's statements that it would increase prices in response to tariffs.

---

[22] https://web.archive.org/web/20241008192813/https://www.targetoptical.com/to-us/oakley/888392143570
https://web.archive.org/web/20250120233218/https://www.targetoptical.com/to-us/oakley/888392143570
https://web.archive.org/web/20250522002506/https://www.targetoptical.com/to-us/oakley/888392143570
https://www.targetoptical.com/to-us/oakley/888392143570

[23] https://web.archive.org/web/20250320215921/https://www.targetoptical.com/to-us/oakley/888392666352
https://web.archive.org/web/20250513062312/https://www.targetoptical.com/to-us/oakley/888392666352
https://web.archive.org/web/20251210104751/https://www.targetoptical.com/to-us/oakley/888392666352
https://www.targetoptical.com/to-us/oakley/888392666352

[24] https://web.archive.org/web/20240915072025/https://www.targetoptical.com/to-us/ray-ban/8053672006667
https://web.archive.org/web/20250323081119/https://www.targetoptical.com/to-us/ray-ban/8053672006667
https://web.archive.org/web/20250519053119/https://www.targetoptical.com/to-us/ray-ban/8053672006667
https://www.targetoptical.com/to-us/ray-ban/8053672006667

[25] https://web.archive.org/web/20240718023601/https://www.targetoptical.com/to-us/ray-ban/8053672587685
https://web.archive.org/web/20250318111225/https://www.targetoptical.com/to-us/ray-ban/8053672587685
https://web.archive.org/web/20250522011304/https://www.targetoptical.com/to-us/ray-ban/8053672587685
https://www.targetoptical.com/to-us/ray-ban/8053672587685

36.     EssilorLuxottica applied tariff surcharges like those in the above examples across its products and caused EssilorLuxottica's consumers to pay a higher price for those products. This is especially the case because EssilorLuxottica, as manufacturer, importer, and retailer, has control over every aspect of the pricing for its products.

37.     Plaintiff and each member of the Class purchased one or more of EssilorLuxottica's products through its retail and e-commerce outlets after the subject tariffs were imposed. At that time, Plaintiff and the Class paid tariff surcharges to EssilorLuxottica.

## III.    ESSILORLUXOTTICA SEEKS REFUNDS OF DUTIES PAID.

38.     In April 2025, several companies sued in the Court of International Trade challenging the legality of President Trump's executive orders and the resulting tariffs ("Challenged Tariff Orders").[26] That Court held the Challenged Tariff Orders were unlawful because they exceeded the President's authority under the IEEPA, granted declaratory relief that the Challenged orders were invalid as contrary to law, and issued a universal permanent injunction enjoining enforcement of the tariffs.

39.     The Federal Circuit affirmed the Court of International Trade's determination regarding the unlawfulness of the Challenged Tariff Orders and grant of declaratory relief, but vacated the universal injunction *en banc*.[27]

---

[26] *See* Complaint, *V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Ct. Int'l Trade Apr. 14, 2025), Dkt. No. 2.

[27] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1347 (Fed. Cir. 2025), *cert. granted*, 146 S. Ct. 73, 222 L. Ed. 2d 1231 (2025).

40.     The Federal Circuit stayed its decision pending the Government's petition for a writ of certiorari and the Supreme Court's subsequent decision.[28] The Supreme Court granted certiorari and heard oral argument in *V.O.S. Selections, et al. v. Trump*, on November 5, 2025.

41.     Following the Federal Circuit's decision, on November 26, 2025, EssilorLuxottica sued U.S. Customs and Border Protection in the Court of International Trade seeking to enjoin the federal government from enforcing the Challenged Tariff Orders and an order refunding all unlawful duties collected from EssilorLuxottica.[29]

42.     Just as with the Plaintiffs in in *V.O.S. Selections*, EssilorLuxottica asserts the Challenged Tariff Orders are unlawful and seeks a court order requiring the Government to refund "all IEEPA duties collected from Plaintiffs, with interest as provided by law."[30]

43.     In its complaint, EssilorLuxottica makes no mention of the consumers, including Plaintiff and the Class members, who bore the burden of the subject tariffs through a tariff surcharge implemented by EssilorLuxottica as discussed above.

44.     Nor has EssilorLuxottica stated its intention to return tariff surcharges to consumers if it is issued a refund. Notably, other companies like FedEx have made such assurances to consumers stating that "if refunds are issued to FedEx, we will issue refunds to the shippers and consumers who originally bore those charges."[31]

---

[28] Order, *V.O.S. Selections*, 149 F.4th at 1347 (Aug. 29, 2025), Dkt. No. 161.

[29] Complaint at 15, *EssilorLuxottica*, *supra* note 3.

[30] *Id.*

[31] *Navigating U.S. Tariffs and Customs Regulations*, FedEx, https://www.fedex.com/en-us/shipping/international/us-tariffs-impact.html (last visited Feb. 26, 2026).

45.    On December 12, 2025, following consolidation with similar cases, the Court of International Trade stayed EssilorLuxottica's case pending the Supreme Court's decision in *V.O.S. Selections*.[32]

46.    On February 20, 2026, the Supreme Court of the United States held that the subject tariffs are unlawful because the imposition of such tariffs exceeds President's authority under the IEEPA. *Learning Res.*, 2026 WL 477534, at \*13–14. In so doing, the Supreme Court affirmed the judgment of the Court of Appeals in *V.O.S. Selections, Inc.*, 149 F.4th 1312. Given this unappealable decision, there is now no ambiguity as to the unlawfulness of the subject tariffs. And as Justice Kavanaugh noted in his dissent, "the interim effects of the Court's decision could be substantial," including requiring the United States to "refund billions of dollars to importers who paid the [subject] tariffs, even though some importers may have already passed on costs to consumers or other." *Learning Res., Inc. v. Trump*, 607 U.S. ___, Nos. 24-1287, 25-250, 2026 WL 477534, at \*51 (U.S. Feb. 20, 2026) (Kavanaugh, J., dissenting).

47.    As Justice Kavanaugh anticipated, EssilorLuxottica seeks a refund for tariff payments it has already passed on to consumers. To the extent that EssilorLuxottica is entitled to a refund for its payments of the subject tariffs, Plaintiff and the Class are entitled to restitution of the tariff surcharge EssilorLuxottica charged them at the time of their purchases. If EssilorLuxottica retains the refund of tariffs that it did not ultimately bear the full expense of in the first place, and which were instead borne by consumers, EssilorLuxottica will receive an unjust windfall of funds that rightfully belong to Plaintiff and the Class.

---

[32] Text Entry, *EssilorLuxottica et al. v. U.S. Customs and Border Prot. et al.*, No. 1:25-cv-00310 (Dec. 23, 2025), Dkt. No. 12.

48.    If Plaintiff and the Class had known that EssilorLuxottica would unfairly retain the tariff surcharge for the subject tariffs EssilorLuxottica then argued were unlawful, they would not have purchased or would have paid less for EssilorLuxottica's products.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action on behalf of themselves and on behalf of all others similarly situated (the "Nationwide Class") as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4).

50.    The Nationwide Class is initially defined as follows:

> All individuals in who purchased an EssilorLuxottica product through EssilorLuxottica's retail or e-commerce outlets within the Class Period.

51.    Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiff brings this action on behalf of the following New York Class initially defined as:

> All individuals in the state of New York who purchased an EssilorLuxottica product through EssilorLuxottica's retail or e-commerce outlets within the Class Period.

52.    The Nationwide Class and the New York Class are referred to herein as "Class," unless otherwise stated.

53.    The Class Period begins on February 1, 2025, up to the date this action was commenced and continues through the present and the date of judgement. Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues. As described below, the Class satisfies the elements of Fed. R. Civ. P. 23(a) and Rule 23(b).

54.    **Numerosity**. The Class members are so numerous that joinder of each individual class member would be impracticable and unfeasible. The Class consists of at least thousands of

EssilorLuxottica customers who made purchases during the Class Period. The customers included in the Class are ascertainable, as the identities can be determined by appropriate discovery. The precise number of class members, and their addresses, are unknown to Plaintiff at this time but can be ascertained from Defendant's records. The Class is, however, so large that Class members cannot be consolidated in one complaint and it would be impractical for each to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

55.    **Commonality and Predominance.** There is a well-defined community of interest among the Class members and common questions of both law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

1.    Whether Defendants passed on tariff-related charges onto customers;

2.    Whether consumers paid increased prices for Defendants' products attributable to the cost of tariffs;

3.    The amount to which consumers paid for the costs of tariffs;

4.    Whether Defendants' retention of tariff refunds is unjust without payment;

5.    Whether Defendants acted unfairly or deceptively by charging consumers for tariff-related costs and then retaining any reimbursements of those tariff charges;

6.    Whether Plaintiff and the class members are entitled to equitable relief, including, but not limited to, restitution as requested in this Complaint;

7.    Whether Defendants' conduct has harmed Plaintiff and the Class uniformly; and

8.     Whether declaratory relief would afform uniform benefits to the Class.

56.    **Typicality.** Plaintiff's claims are typical of those of the Class members in that they arise out of the same course of wrongful conduct committed by Defendants, including its inequitable retention of tariff refunds which rightfully belong to Plaintiff and Class members. Plaintiff and Class members have experienced the same harm, including loss of a uniform tariff surcharge on their purchases. The effort Plaintiff undertakes to pursue their own claims will significantly benefit the Class members because of the identical nature of the issues across the Class.

57.    **Adequacy of Representation.** Plaintiff will continue to fairly and adequately represent and protect the interests of the members of the Class. Plaintiff shares a common interest with the Class members, with respect to the conduct of the Defendants herein and redress of injury. Plaintiff has suffered an injury-in-fact because of the conduct of the Defendants, as alleged herein. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex class actions. Plaintiff and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class members. Plaintiff and Plaintiff's counsel have no interests contrary to the Class members and will fairly and adequately protect the interests of the Class.

58.    **Rule 23(b)(2) Class Certification is Appropriate.** Plaintiff seeks specific declaratory relief that would provide relief to the entire Class and remedy a Class-wide harm. Plaintiff and Class members have been harmed due to a uniform course of conduct. Defendants subjected Plaintiff and Class members to the same unfair, unlawful, and unfair practices and harmed them in the same manner by retaining tariff refunds that rightfully belonged to Plaintiff and Class members.

59.     A uniform declaration would benefit the Class as a whole. Plaintiff seeks declaratory relief that would prevent Defendants from unfairly retaining tariff refunds consisting of Plaintiff's monies and require Defendants to return those monies to Plaintiff and the Class members.

## CLAIMS FOR RELIEF

### COUNT I
Money Had and Received
(On Behalf of Plaintiff and Nationwide Class)

60.     Plaintiff incorporates by reference the facts alleged above.

61.     Plaintiff alleges this claim individually and on behalf of the proposed class.

62.     Defendants received money from Plaintiff and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

63.     The money belonged to Plaintiff and to each member of the proposed Class.

64.     Defendants have not returned the money.

65.     It will give offense to equity and good conscience of Defendant is permitted to retain the tariff surcharge. Plaintiff seeks the return of the money in an amount to be proven at trial.

66.     Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

### COUNT II
Unjust Enrichment
(On Behalf of Plaintiff and Nationwide Class)

67.     Plaintiff incorporates by reference the facts alleged above.

68.     Plaintiff alleges this claim individually and on behalf of the proposed class.

69.     As described herein, Defendants charged Plaintiff and each member of the proposed class tariff surcharges when they purchased Defendants' products. By collecting these tariff surcharges, Defendants received and knowingly and willingly accepted a direct benefit at Plaintiff and the members of the proposed Class's expense. The Supreme Court has determined that the tariffs were unlawful.

70.     It would be unjust for Defendants to retain tariff surcharges to cover the expense of the subject tariffs when Defendants are entitled to a refund for the subject tariffs paid.

71.     Defendants' unjust conduct was the proximate cause, and a substantial factor, in causing Plaintiff and the members of the proposed Class's losses and damages.

72.     Plaintiff seeks the return of the tariff surcharges in an amount to be proven at trial.

**COUNT III**
Declaratory Relief, 28 U.S.C. § 2201
(On Behalf of Plaintiff and Nationwide Class)

73.     Plaintiff incorporates by reference the facts alleged above.

74.     Plaintiff alleges this claim individually and on behalf of the proposed Class.

75.     Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

76.     Plaintiff's claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

77.     Plaintiff has suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiff will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

78.     This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiff but refunded to Defendant is unlawful for any of the above reasons.

**COUNT IV**
Ohio Statute § 1345.02 (Ohio Consumer Sales Practices Act or "OCSPA")
(On Behalf of Plaintiff and the Nationwide Class)

79.     Plaintiff incorporates by reference the facts alleged above.

80.     Plaintiff alleges this claim individually and on behalf of the proposed Class.

81.     The OCSPA makes unlawful a supplier's "unfair or deceptive act or practice in connection with a consumer transaction . . . whether it occurs before, during, or after the transaction."

82.     Defendants are suppliers under the OCSPA and engaged in a consumer transaction through the sale of Defendants' products to consumers, including Plaintiff and the Class.

83.     In connection with the sale of Defendants' products to consumers including Plaintiff and the Class, Defendants committed unfair, deceptive, and/or unconscionable acts.

84.     As alleged herein, Defendants' retention of tariff refunds, despite having shifted those costs to consumers via tariff surcharges, is an unfair, deceptive, and/or unconscionable act under the OCSPA. Plaintiff and the members of the proposed Class paid more than the value they received, and Defendants unlawfully failed to return resulting surplus.

85.     Defendants' unfair, deceptive, and/or unconscionable conduct was a substantial factor and proximate cause of Plaintiff's and the Class's injuries.

86.     As a result of Defendant's violations of the OCSPA, Plaintiff and the Class seek all available damages, in addition to reasonable attorneys' fees and costs, and injunctive relief to prevent Defendant from engaging in the unlawful conduct.

**COUNT V**
New York General Business Law § 349 (NY GBL § 349)
(On Behalf of the New York Class)

87.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

88.    NY GBL § 349 declares unlawful "unfair, deceptive, or abusive acts or practices" in any business, trade, or commerce in New York.

89.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

90.    Defendant engaged in consumer-oriented conduct by marketing and selling its products to consumers, including Plaintiff and the Class, through its websites, retail stores, and other retail channels.

91.    Defendant's retention of tariff refunds, despite having shifted those costs to consumers via tariff surcharges, is an unfair practice under NY GBL § 349. Consumers paid more than the value they received, and Defendants unlawfully kept the resulting surplus.

92.    Plaintiff and the Class have been injured because of Defendant's unfair practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the tariff surcharge.

93.    As a result of Defendant's violations of NY GBL § 349, Plaintiff and the Class seek all available damages, including statutory damages, in addition to reasonable attorneys' fees and costs, and injunctive relief to prevent Defendant from engaging in the unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an order:

a.    Certifying the Class as requested herein;

b.    Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

c.    Finding that Defendant engaged in the unlawful conduct as alleged herein;

d.    Granting permanent injunctive relief to prohibit and prevent Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

e.    Awarding Plaintiff and class members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

f.    Granting the declaratory relief sought herein;

g.    Awarding statutory damages, trebled, and/or punitive or exemplary damages, to the extent permitted by law;

h.    Ordering disgorgement and restitution of all profits received or retained by Defendants as a result of their unfair acts, omissions, and practices;

i.    Awarding to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

j.      That the Court grant such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: February 26, 2026                    Respectfully submitted,

                                            /s/ *Raphael Janove*
                                            Raphael Janove

                                            **JANOVE PLLC**
                                            Raphael Janove (SBN 361193)
                                            raphael@janove.law
                                            500 7th Avenue, 8th Fl.
                                            New York, NY 10018
                                            Telephone: (646) 347-3940

                                            **ZIMMERMAN REED LLP**
                                            June P. Hoidal*
                                            Charles R. Toomajian*
                                            Michael J. Laird*
                                            Katja D. Lange*
                                            1100 IDS Center
                                            80 South 8th Street
                                            Minneapolis, MN 55402
                                            Tel: (612) 341-0400
                                            June.Hoidal@zimmreed.com
                                            Charles.Toomajian@zimmreed.com
                                            Michael.Laird@zimmreed.com
                                            Katja.Lange@zimmreed.com

                                            **Pro Hac Vice* forthcoming

                                            *Attorneys for Plaintiff Nathan Ward*
                                            *and the Proposed Class*